# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT J. TURCO,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ZAMBELLI FIREWORKS,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

### I.     PRELIMINARY STATEMENT

By this action, Plaintiff, Robert J. Turco, seeks wage loss, compensatory and punitive damages, costs, and attorneys' fees because Defendant, Zambelli Fireworks, failed to accommodate his disability and terminated him because of his disability, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.  Plaintiff also seeks the same remedies as a result of Defendant terminating him in retaliation for his reasonable accommodation requests and complaint of disability discrimination, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12203.

### II.     JURISDICTION

1.     This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts

constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3. On May 24, 2018, Plaintiff filed a Charge of Discrimination with the EEOC against the Defendant, alleging disability discrimination, retaliation, and failure to accommodate. Plaintiff's Charge was dual filed with the PHRC. On December 10, 2018, the EEOC issued a Notice of Right to Sue to Plaintiff.[1]

### III. PARTIES

4. Plaintiff, Robert J. Turco, is an adult who resides at 1625 Old Princeton Road, New Castle, PA 16101. At the time of the incident complained of in this lawsuit and presently, he was and is a citizen of the Commonwealth of Pennsylvania and the United States of America.

5. Defendant, Zambelli Fireworks, is a Pennsylvania corporation in the fireworks industry, with its business headquarters located at 120 Marshall Drive, Warrendale, PA 15086.

### IV. STATEMENT OF CLAIM

6. Turco began working for Defendant on March 31, 1984 as a cost estimator.

7. Over his 34-year career with Defendant, Turco was a dedicated and exemplary employee who received several promotions, ending with the title of senior project manager.

8. As a senior project manager, Turco's duties included sales, display logistics, recruiting and arranging field personnel, overseeing satellite warehouses, and working with government officials.

---

[1] Once the administrative requirements have been exhausted, Plaintiff intends to amend this Complaint to include three additional counts under the PHRA.

9.      Turco advanced at Defendant because of his strong performance, which Defendant never called into question until he revealed to Tom Bametzrieder, Defendant's president, that he suffers from claustrophobia.

10.      Turco's claustrophobia substantially limits his ability to think and breathe, among other negative impacts on his major life activities.

11.      The need to disclose his disability arose only after Defendant announced on October 12, 2017 that its headquarters were moving to a new building.

12.      On October 25, 2017, Turco had discussions with Bametzrieder about the specifics of the move and its impacts, including Turco's future. Bametzrieder assured Turco that he was very important to the company and that Bametzrieder had no intention of cutting his compensation or changing his sales territory. Turco raised a question about whether he would have a window in his new office. Bametzrieder responded that Turco may not have a window but that Defendant could have one put in.

13.      On October 29, 2017, Turco observed the physical building at the location of the new office and noted that it contained a limited number of windows. Given that his office at the time had a window, which is what made working in that confined space tolerable, the lack of windows in the new building deeply concerned Turco.

14.      During the week of October 30, 2017, Turco disclosed to Bametzrieder in a face-to-face meeting in Bametzrieder's office that Turco suffers from claustrophobia, explained how a windowless office would affect him given his disability, and reiterated his need for an office with a window, this time explaining he needed it as an accommodation. Bametzrieder told Turco that he understood and assured Turco that Defendant would accommodate him by providing him with an office with a window.

15.     Turco spoke to Bametzrieder about his claustrophobia again, this time in a meeting with Bametzrieder on December 4, 2017.  Turco requested the meeting to confirm that he was going to have a window in his new office.   Instead of being supportive, Bametzrieder indifferently told Turco that he was probably not going to get a window.

16.     The next day, December 5, 2017, Bametzrieder met with Turco and informed him that Bametzrieder was reassigning approximately fifty percent of Turco's accounts to other project managers, and his decision was irreversible.  Bametzrieder's justification for the account adjustment was that he was not sure if he could count on Turco and if Turco could continue with the company.

17.      The drastic reduction in Turco's sales territory was a break from Bametzrieder's earlier promise and left Turco stunned.

18.     Bametzrieder followed up his reduction of Turco's accounts by asking Turco on January 9, 2018 when he was going to quit.  Surprised by the question, Turco informed Bametzrieder that he had no intention of quitting.  During this conversation, Bametzrieder continued to pressure Turco about quitting.  When Bametzrieder did not get the response that he hoped for, he said that he was going to reduce Turco's compensation and also called Turco an "asshole."

19.     On January 17, 2018, Turco received his annual performance review, which Bametzrieder completed.  The review lists criteria on which Turco was evaluated pursuant to a numerical scale from one to seven, with seven being the highest (meaning "Far Exceeds Expectation").  The scores for the criteria were also averaged for an overall employee score.  Out of the eight criteria, Turco received five ratings of five ("Consistently Meets Expectation") two ratings of three ("Partially Meets Expectation") and one rating of one ("Fails to Meet

Expectation"). His overall employee score was four (the review does not assign a description to that number).

20.     Turco received the one rating, his lowest, for the criterion "Innovation and Change." In the comments section for that criterion, Bametzrieder wrote, "Unfavorable reaction to office relocation." This blatantly shows that Bametzrieder punished Turco because he revealed his disability and requested a reasonable accommodation for it.

21.     On January 19, 2018, Sandy McStay, Defendant's human resources director, presented Turco with the floor plan of the new building, which showed the office assignments of Defendant's employees, and also a document showing the layout of Turco's assigned office.

22.     Turco immediately recognized that his office did not contain a window and asked McStay why Defendant failed to assign him to one that did. McStay answered, "This is how the office has been laid out." She also added that the assignments could not be changed. Turco then discussed his claustrophobia with McStay and how the lack of a window was a problem for him. Upon hearing his concerns, McStay's only advice was, "There is a walking trail nearby if you need to use it."

23.     Defendant assigned Turco with the smallest office of all of its project managers.

24.     In the weeks leading up to Defendant's move, which was set to take place between March 2-5, 2018, Defendant invited all of the seven employees being relocated to view their new offices, except Turco.

25.     On March 1, 2018, Turco showed up to work as usual, only to find that Defendant made the move early and without notifying him. Like something out of a movie, all of his colleagues were gone, with their offices cleaned out.

26. Embarrassed, but undeterred, Turco drove to Defendant's new location and began working in his windowless office.

27. While in the office that morning, Turco had trouble breathing and focusing his thoughts because of his claustrophobia.

28. By 1:00 p.m., Turco could no longer endure the confined space. As a result, he approached Bametzrieder to discuss the situation.

29. During that meeting, Turco described how the windowless office made him feel closed in and caused him trouble breathing. Bametzrieder called in McStay to join the conversation. Once McStay arrived, Turco reiterated his concerns and asked for Defendant to relocate his office to Defendant's fireworks plant, where the offices have windows. Bametzrieder said that there was nothing that Defendant could do to help. In an apparent effort to humiliate Turco, McStay added that they could put Turco's desk in the hallway. McStay also said that they were not going to move Turco to Defendant's plant because then all of the relocated employees would want to work from that location.

30. Despite McStay's alleged fear of a mass exodus, Defendant did allow Bob Rearick to work from its plant.

31. On the next day, March 2, 2018, Turco noticed that his company cellphone and credit card were missing from his office. He later learned that McStay removed them. McStay claimed that she removed them to keep them safe.

32. Turco continued to struggle in his new office despite his listening to the radio to calm himself and taking short breaks outside during the workday.

33. On March 7, 2018, Bametzrieder approached Turco in the hallway outside of McStay's office and began interrogating him about a laptop that Bametzrieder saw in Turco's

office.  Turco explained that it was a personal laptop that he used for listening to the radio in order to help with his claustrophobia and pointed out that other office personnel were permitted to listen to their radios.  Bametzrieder said that Turco's laptop use was unacceptable and ordered him to put it away and remove it from the premises.

34. Because of Bametzrieder's actions, Turco emailed Bametzrieder later that day to complain about his repeated failure to accommodate Turco's disability.  Turco also complained about Bametzrieder's differential treatment of him.  Bametzrieder never responded to that email.

35. On March 13, 2018, Bametzrieder called Turco into a meeting with himself and McStay for a surprise evaluation.

36. Bametzrieder began the meeting by attacking Turco's performance.  Turco attempted to respond to Bametzrieder's claims, but Bametzrieder cut him off each time.

37. Because Bametzrieder still refused to acknowledge his disability and accommodation request, Turco felt obligated to revisit those topics in this meeting.  When Turco described how the new office affected him, McStay responded that his new office is three times as large as his old office (this is inaccurate, his old office was 13' x 15' and his new office was 12' x 16').  McStay then offered again to move Turco's desk into the hallway.

38. Turco also reminded Bametzrieder during this meeting about Bametzrieder's October promise to provide him with a window.  Bametzrieder's response was, "Prove it! Prove it!"  Bametzrieder then told Turco that he needed to decide what he was going to do with Turco.  Turco asked what he meant, and Bametzrieder explained that he was deciding whether to terminate him.

39. After the meeting ended on March 13, 2018, Turco returned to his office. Two to three minutes after leaving the meeting, McStay came to Turco's office and said that Bametzrieder terminated him.

40. Following on McStay's heels, Bametzrieder then came into Turco's office and violently tore the cords out of Turco's computer and tore out the plugs connecting it to the wall. He then blocked Turco's exit so that he could not leave.

41. Unsure how to proceed, Turco asked Bametzrieder, who was staring at Turco's bag that contained his personal belongings, if Bametzrieder would like to search his bag. Bametzrieder said that he would and proceeded to inspect the contents of Turco's bag. After completing his search, Bametzrieder remained in place, forcing Turco to walk around him in order to exit.

42. As a result of Defendant's aforementioned conduct, Plaintiff has suffered a loss of past and future wages and benefits, substantial mental anguish, and emotional distress.

## V.   CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF ADA – TERMINATION

43. Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

44. Defendant has intentionally and willfully engaged in a series of unlawful acts, practices, policies, and/or procedures in discriminating against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

45. Defendant's decision to terminate Plaintiff was induced by its intent to discriminate against Plaintiff on the basis of his disability and/or perceived disability as evidenced, among other things, Bametzrieder's actions following Plaintiff's disclosure of his disability and reasonable accommodation requests.

46. Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## COUNT II – VIOLATION OF ADA – RETALIATION

47. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

48. Defendant intentionally retaliated against Plaintiff because of his continued reasonable accommodation requests and good faith complaint of disability discrimination, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12203.

49. Defendant's decision to terminate Plaintiff was induced by its intent to retaliate against Plaintiff, as evidenced by, among other things, Bametzrieder's actions following Plaintiff's reasonable accommodation requests and Plaintiff's disability discrimination complaint.

50. Plaintiff has been directly harmed as a result of these violations as is fully set forth above.

## COUNT III – VIOLATION OF ADA – FAILURE TO ACCOMMODATE

51. Plaintiff incorporates by reference the averments contained in the previous paragraphs as if set forth fully herein.

52.  Defendant failed to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112.

53.  As set forth above, Plaintiff is an individual with a disability because he suffers from an impairment that substantially limits one or more major life activities.

54.  Plaintiff informed Defendant of that disability and requested a reasonable accommodation on several occasions.

55.  Defendant failed to engage in the interactive process and failed to accommodate Plaintiff's disability, despite the availability of reasonable accommodations for Plaintiff's disability.

56.  Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a)  Assume jurisdiction herein;

(b)  Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c)  Award Plaintiff wage loss damages, including back pay, front pay, and lost future earnings, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment, including health, dental, and vision benefits;

(d)  Award Plaintiff compensatory and punitive damages;

 (e) Award Plaintiff pre and post-judgment interest;

 (f) Award Plaintiff costs and attorneys' fees under all counts; and

 (g) Grant such other relief as the Court deems just and appropriate.

          Respectfully Submitted,

**JURY TRIAL DEMANDED**   <u>s/ David B. Spear</u>

          David B. Spear
          PA Id. No. 62133

          Nick Kennedy
          PA Id. No. 317386

          Minto Law Group, LLC
          603 Stanwix Street, Suite 2025
          Pittsburgh, PA 15222