IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT J. TURCO, | ) | |
| | ) | |
| | ) | 2:19-CV-00174-CCW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZAMBELLI FIREWORKS | ) | |
| MANUFACTURING CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Robert Turco's Motion for Prejudgment Interest and Post-Judgment Interest, ECF No. 124, and his Petition for Attorneys' Fees and Expenses, ECF No. 129. For the reasons that follow, Mr. Turco's Motion and Petition will be GRANTED IN PART and DENIED IN PART.

**I.      Background**

In this case, Mr. Turco claimed that his former employer, Defendant Zambelli Fireworks Manufacturing Co. ("Zambelli"), violated his rights under the Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA") by (1) failing to provide him with a reasonable accommodation for his disability (claustrophobia);  (2) retaliating against him for requesting an accommodation and for complaining that Zambelli discriminated against him by denying his request for accommodation;  and (3) terminating his employment because of his disability.  *See* ECF No. 21.  Mr. Turco sought backpay, front pay, compensatory and punitive damages, pre- and post-judgment interest, and attorneys' fees, costs, and expenses.  *Id.*

The case was tried before a jury.  Shortly before trial, Mr. Turco voluntarily decided not to present evidence on his claim that Zambelli retaliated against him for complaining that Zambelli

discriminated against him by denying his request for a reasonable accommodation. *See* ECF No. 107. The jury returned a verdict in Mr. Turco's favor on his failure to accommodate claim and awarded him $15,000 in compensatory damages. *See* ECF No. 119. Otherwise, the jury found in favor of Zambelli. *See id.*

Here, Mr. Turco seeks prejudgment and postjudgment interest and attorneys' fees, costs, and expenses. Zambelli opposes Mr. Turco's request for prejudgment interest and disputes the total amount of attorneys' fees sought by Mr. Turco. The Court will address each in turn.

## II.     Discussion

### A.     Mr. Turco's Request for Prejudgment Interest Will Be Denied

"The decision whether to award prejudgment interest is within the sound discretion of the trial court." *Marthers v. Gonzales*, No. 05-3778, 2008 U.S. Dist. LEXIS 61715, at \*20 (E.D. Pa. Aug. 13, 2008) (citing *Robinson v. Southeastern Pennsylvania Transp. Auth.*, 982 F.2d 892, 898 (3d Cir. 1993). "Prejudgment interest 'serves to compensate a plaintiff for the loss of the use of money that the plaintiff otherwise would have earned had he not been unjustly discharged.'" *Eshelman v. Agere Sys.*, 554 F.3d 426, 442 (3d Cir. 2009) (quoting *Booker v. Taylor Milk Co.*, 64 F.3d 860, 868 (3d Cir. 1995)). "Similarly, an award to compensate a prevailing employee for her increased tax burden as a result of a lump sum award will, in the appropriate case, help to make a victim whole." *Id.* Ultimately, the purpose of both an award of prejudgment interest and an adjustment for tax consequences is "'to make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Id.* at 440 (quoting *In re Continental Airlines*, 125 F.3d 120, 135 (3d Cir. 1997)). Thus, in *Eshelman*, the United States Court of Appeals for the Third Circuit, in holding that an adjustment for negative tax consequences may be appropriate in certain cases, said "[o]ur conclusion is driven by the 'make whole' remedial purpose of the

antidiscrimination statutes.  Without this type of equitable relief in appropriate cases, it would not be possible 'to restore the employee to the *economic status quo* that would exist but for the employer's conduct.'"  *Id.* at 442 (quoting *In re Continental Airlines,* 125 F.3d at 135) (emphasis added).  Courts apply a "strong presumption" in favor of awarding prejudgment interest;  on the other hand, "there is no presumption in favor of an adjustment for negative tax consequences." *Marcus v. PQ Corp.*, 458 F. App'x 207, 214 (3d Cir. 2012) (citations omitted).

Here, the jury found in Mr. Turco's favor on his failure to accommodate claim, and awarded him compensatory damages.  *See* ECF No. 119.  On the other hand, the jury concluded that Zambelli did not retaliate against Mr. Turco for requesting an accommodation or discriminate against him on the basis of disability when it terminated his employment.  *See id.*  As such, Mr. Turco was awarded only non-economic damages.  Other courts in this Circuit have declined to award prejudgment interest, or make an adjustment for negative tax consequences, in similar cases. *See, e.g., Marthers v. Gonzales,* No. 05-3778, 2008 U.S. Dist. LEXIS 61715, at *22 (E.D. Pa. Aug. 13, 2008) ("If the purpose of an award of prejudgment interest is to compensate a plaintiff for the loss of use of money that he otherwise would have earned but for defendant's discrimination, that purpose is not served by awarding interest on compensatory damages.") (collecting cases). Accordingly, because Mr. Turco did not suffer any lost wages as a result of Zambelli's actions— and, therefore, "the 'make whole' remedial purpose" of the ADA would not be served by either an award of prejudgment interest or an adjustment for negative tax consequences—Mr. Turco's Motion will be denied to the extent he seeks prejudgment interest.

### B.    Mr. Turco's Request to Amend the Judgment to Reflect Postjudgment Interest Will Be Granted

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court…Such interest shall be calculated from the date of the entry

of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield…for

the calendar week *preceding* the date of the judgment." 28 U.S.C. § 1961(a) (emphasis added).

Judgment was entered in this case on October 1, 2021. *See* ECF No. 119. The weekly average 1-

year constant maturity Treasury yield for the week preceding the date of judgment in this case was

0.08%. *See Selected Interest Rates Instruments, Yields in percent per annum:  Weekly*, Federal

Reserve Economic Data,  https://fred.stlouisfed.org/release/tables?rid=18&eid=290&od=2021-

10-01# (last visited February 9, 2022).

   That said, "post-judgment interest is awarded by statute as a matter of law so it is

automatically added, whether or not the district court orders it." *Dunn v. Hovic*, 13 F.3d 58, 62

(3d Cir. 1993). Accordingly, while the Court finds that the applicable postjudgment interest rate

in this case is 0.08%, because the award of such interest is automatic, no amendment of the

judgment is needed. As such, Mr. Turco's request to amend the judgment will be denied as moot.

   **C.     Mr. Turco's Request for Attorneys' Fees Will Be Reduced in Part**

   Under the ADA, "[i]n any action or administrative proceeding commenced pursuant to this

chapter, the court or agency, in its discretion, may allow the prevailing party…a reasonable

attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. The parties agree

that Mr. Turco is a "prevailing party." *See* ECF No. 130 at 4;  ECF No. 131 at 1 ("Zambelli

recognizes that Plaintiff is entitled to reasonable attorney's fees and costs as a prevailing party on

his failure to accommodate claims under the [ADA] and [PHRA].") (citations omitted). Zambelli

does not challenge Mr. Turco's request for expenses or costs;  instead, Zambelli's objections are

limited to the calculation of a reasonable attorneys' fee. *See* ECF No. 131.

   "The party seeking attorney's fees has the burden to prove that its request for attorney's

fees is reasonable." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The petitioner

can meet this initial burden "by 'submit[ting] evidence supporting the hours worked and rates

4

claimed.'" *Taylor v. USF-Red Star Express, Inc.*, 212 F. App'x 101, 111 (3d Cir. 2006) (quoting *Rode,* 892 F.2d at 1183 (internal citation omitted)).  The party opposing the petition "'then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee.'"  *Id.* (quoting *Rode,* 892 F.2d at 1183 (internal citation omitted)).  "'[T]he adverse party's submissions cannot merely allege in general terms that the time spent was excessive,' but must identify both the general type of work being challenged and the specific grounds for contending that the hours were unreasonable."  *Id.* (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989)).  Once a challenge has been properly raised, "a district court 'has a great deal of discretion to adjust the fee award in light of those objections.'"  *Id.* (quoting *Rode,* 892 F.2d at 1183).  However, "a district court may not make *sua sponte* reductions to fee requests based on material facts not raised at all by the adverse party."  *Id.* (citing *Bell*, 884 F.2d at 720).

"'The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate'"— i.e. the "lodestar."  *Rode*, 892 F.2d at 1183 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Lanni v. New Jersey,* 259 F.3d 146, 149 (3d Cir. 2001).  "A District Court has substantial discretion in determining what constitutes a reasonable rate and reasonable hours, but once the lodestar is determined, it is presumed to be the reasonable fee."  *Lanni*, 259 F.3d at 149 (citing *Rode*, 892 F.2d at 1183).  Either party may seek adjustment to the lodestar, and, "[i]f that party meets the burden of proving that an adjustment is appropriate, the lodestar amount may be increased or reduced at the discretion of the District Court."  *Id.* (citing *Rode,* 892 F.2d at 1183).

Here, the Court concludes that Mr. Turco has met his initial burden of submitting evidence supporting the (1) hours worked and (2) rates claimed.  Although Zambelli argues that "it was

unreasonable for two experienced trial attorneys, who both bill at a rate of $400 dollar per hour or more, try this case," Zambelli has not offered any evidence (or specific argument) disputing the hourly rates claimed by Mr. Turco's counsel.  ECF No. 131 at 4–5.  Accordingly, before calculating the lodestar, the Court will determine "the number of hours reasonably expended on the litigation." *Lanni*, 259 F.3d at 149 (citation omitted).

Mr. Turco's counsel billed a total of 983.5 hours on this case.  *See* ECF No. 129-1 at 66 (total hours for Mr. Spear, Mr. Kennedy, and Ms. McElroy of Minto Law Group, LLC);  ECF No. 129-2 at 19, 22 (total hours for Ms. Elzer and Ms. Van Housen of Elzer Law Firm, LLC).  After making reductions from this total for "work associated solely with the termination-based claims" and "charges for work that did not meaningfully contribute to the success of this case, such as administrative tasks for all attorneys, and duplicative tasks involving associate attorneys earlier in the case," ECF No. 129 ¶ 5, Mr. Turco's attorneys recorded 894.05 hours on this case.  *See* ECF No. 129-1 at 67 (net hours for Mr. Spear, Mr. Kennedy, and Ms. McElroy);  ECF No. 129-2 at 19, 22 (net hours for Ms. Elzer and Ms. Van Hausen, calculated by applying noted deduction).[1]  Those hours, and the attorney's billing rate, are as follows:

| Attorney | Hourly Rate | Total Hours | Net Hours |
|---|---|---|---|
| Mr. Spear | $450 | 584.5 | 550.9 |
| Mr. Kennedy | $295 | 143.5 | 117.4 |
| Ms. McElroy | $295 | 87.55 | 60.3 |
| Ms. Elzer | $400 | 127.25 | 124.75 |
| Ms. Van Hausen | $125 | 43.45 | 43.45 |

---

[1] Zambelli reports Mr. Turco's counsel as having billed 981 total hours before deductions and 896.8 hours after deductions are applied.  Mr. Turco did not provide any such total calculations, but did provide billing records detailing the hours for each attorney.  The Court arrived at the total and net hours for each attorney by examining the billing records submitted by Mr. Turco.

*See id.* Zambelli contends that, before calculating the lodestar and making any additional adjustment, the net hours reported by Mr. Turco's counsel should be further reduced. *See* ECF No. 131 at 5–8.

Zambelli challenges the time spent by Mr. Kennedy and Ms. McElroy on the grounds that their work was "excessive and duplicative when compared to the efforts of Mr. Spear." *Id.* at 7. Zambelli highlights the fact that Mr. Kennedy and Mr. Spear "both attended court conferences, meetings with [Mr.] Turco, and prepared for and attended mediation" and that both Mr. Spear and Mr. Kennedy "participated in drafting the complaint, reviewing client documents, and communicating with [Mr.] Turco." *Id.* As to Ms. McElroy, Zambelli notes that she attended depositions with Mr. Spear and spent 10 hours preparing a pre-trial statement which Mr. Spear then spent 10 hours revising. *Id.* As to Ms. Elzer, Zambelli argues that she "billed for inappropriate tasks like 'pick[ing] up juror list from court[,]' and 'preparing closing argument[,]' which she did not deliver," and that Ms. Elzer's time spent "reviewing trial exhibits and deposition transcripts" should be reduced because it was unreasonable "for an attorney billing at $400.00 per hour to second-chair this straightforward case." *Id.* Finally, for Mr. Spear, Zambelli contends that it is "improper" for him to have billed for "clerical functions like filing documents" and that the time he spent "to prepare a 'trial outline/questions for McKnight'" should be reduced because Mr. McKnight was not called at trial. *Id.* at 8.

While the Court finds some of Zambelli's arguments persuasive, and will make some reductions to the net hours recorded by Mr. Turco's counsel, in general it appears to the Court that Mr. Turco's counsel did not bill for time that was excessive, duplicative or unreasonable.

First, Zambelli repeatedly raises concerns about the number of attorneys—five in total— who worked on this case for Mr. Turco. Having reviewed the time records submitted by Mr.

Turco, the Court notes that this case appears to have been staffed, by and large, by Mr. Spear and one associate or co-counsel—which appears to be about the level of staffing used by Zambelli. Ms. Elzer only became involved, beginning on September 13, 2021, to serve as co-counsel for trial after the case was stayed for an extended period due to the COVID-19 pandemic and after both of the associates who had worked with Mr. Spear on the case had left Mr. Spear's firm.  Furthermore, a line-by-line review of the time records submitted by Mr. Turco tends to support the conclusion that Mr. Spear and Ms. Elzer, as the senior attorneys working on this case, exercised reasonable billing judgment, performing tasks themselves that required their attention and delegating other tasks to more junior attorneys.

Next, the Court notes that Mr. Turco's counsel has already reduced their time with respect to certain categories highlighted by Zambelli as being unreasonable or duplicative.  For example, Zambelli disputes time spent by Ms. McElroy in attending depositions—but this time has already been deducted by Mr. Turco's counsel. *See* ECF No. 129-1 at 36.  The same is true of a significant portion of time Mr. Kennedy spent drafting the Complaint. *See id.* at 16–18.  Likewise for time spent by Mr. Kennedy (and Mr. Spear) on tasks specifically related to mitigation of damages for Mr. Turco's wrongful termination claims. *See, e.g., id.* at 5, 8.  And, while Zambelli contends that time spent by Mr. Spear reviewing documents was duplicative of time spent by Mr. Kennedy, it appears to the Court that Mr. Kennedy performed the lion's share of document review, with Mr. Spear's time on such activities typically occurring in the context of preparing for mediation, depositions, and trial.  Indeed, as with the time spent by Mr. Spear reviewing e-mails between Mr. Kennedy (or Ms. McElroy) and Mr. Turco, some duplication of efforts on such tasks is reasonable and even necessary—after all, senior attorneys need to supervise the junior attorneys working

under them and, moreover, must familiarize themselves with a case to be able to effectively represent their client.

The Court is similarly unpersuaded by the core of Zambelli's challenges to Ms. Elzer's time records. Zambelli claims that it was unreasonable or excessive for Ms. Elzer—an experienced trial attorney—to try this case as co-counsel with Mr. Spear. Zambelli highlights Ms. Elzer's time spent reviewing trial exhibits and deposition transcripts. As Zambelli notes, however, such activities were necessary for Ms. Elzer to effectively represent Mr. Turco at trial. *See* ECF No. 131 at 7. Similarly, even though she did not deliver the closing argument, it was not improper for Ms. Elzer, as co-counsel at trial, to record time related to preparing for closing arguments.

All that said, however, the Court does find that some time recorded by Mr. Turco's attorneys should be excluded from the lodestar calculation. Specifically, the Court agrees with Zambelli that the approximately 65.3 hours of time recorded by Mr. Kennedy for "reviewing documents" should be reduced, and that time spent by Mr. Spear and Ms. Elzer on what appear to be administrative or clerical tasks should likewise be deducted. After reviewing the time records submitted by Mr. Turco, the Court will deduct 10 hours from Mr. Kennedy's net total (for document review), 1.5 hours from Mr. Spear's net total (for administrative tasks such as filing documents or scheduling depositions), and .3 hours from Ms. Elzer's net total (for "pick[ing] up juror list from court").

Applying these deductions yields following lodestar calculation:

| Attorney | Hourly Rate | Total Hours | Net Hours | Adj. Net Hours | Lodestar |
|---|---|---|---|---|---|
| Mr. Spear | $450 | 584.5 | 550.9 | 549.4 | $247,230.00 |
| Mr. Kennedy | $295 | 143.5 | 117.4 | 107.4 | $31,683.00 |
| Ms. McElroy | $295 | 87.55 | 60.3 | 60.3 | $17,788.50 |
| Ms. Elzer | $400 | 127.25 | 124.75 | 124.45 | $49,780.00 |
| Ms. Van Housen | $125 | 43.45 | 43.45 | 43.45 | $5,431.25 |

From the lodestar, Mr. Turco proposes reducing his fee award by an additional 30% to reflect his limited success at trial. Zambelli proposes a reduction of "at least 80%" for the same reason. *See* ECF No. 130 at 1; ECF No. 131 at 12. In short, the parties disagree about the degree to which Mr. Turco's failure to accommodate claims, on which he was successful, were intertwined with his retaliation and discrimination claims, on which he was unsuccessful.

"[C]ourts should not reduce fees simply because some of a prevailing party's *related* claims are unsuccessful." *McKenna v. City of Phila.*, 582 F.3d 447, 457 (3d Cir. 2009) (citing *Hensley*, 461 U.S. at 434-35) (emphasis original). As such, "'[w]here a plaintiff's claims involve "a common core of facts" or are based on "related legal theories, ... [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."'" *Hansen Found., Inc. v. City of Atl. City*, No. 1:19-cv-18608 (NLH/AMD), 2021 U.S. Dist. LEXIS 156765, at *56 (D.N.J. Aug. 19, 2021) (quoting *McKenna*, 582 F.3d at 457 (citation omitted)).

Here, the Court agrees with Mr. Turco that his successful and unsuccessful claims shared a common core of facts—indeed, Mr. Turco's theory of the case was premised entirely on the contention that Zambelli's former president, Mr. Tom Bametzrider, denied Mr. Turco an accommodation, retaliated against him, and then fired him as a result of Mr. Turco's request for an office with a window to accommodate his claustrophobia, upon learning that Zambelli would be moving its headquarters to a new office building. While Zambelli is correct that a substantial portion of the evidence presented at trial was related to Mr. Turco's termination (for example, disputing whether Mr. Turco's poor sales performance was the real reason for his termination), it is not clear that it is possible to disentangle time spent on developing those facts from time spent solely on Mr. Turco's failure to accommodate claim. For example, the accommodation sought by

10

Mr. Turco was an office with a window;   evidence was presented suggesting that Mr. Bametzrider's decision on which salespeople would receive an office with a window at Zambelli's new headquarters was based on performance;  and, Mr. Turco's poor sales performance was the reason Zambelli terminated his employment.  In short, the facts supporting Mr. Turco's successful failure to accommodate claim were closely tied to the facts related to his unsuccessful termination claims.

Accordingly, the Court finds that, in light of Mr. Turco's limited success, but in consideration of the "common core" of facts connecting his successful and unsuccessful claims, a reduction of 30% from the lodestar, as proposed by Mr. Turco, is warranted in this case.  *See Lanni*, 259 F.3d at 151 (district court did not abuse discretion by reducing lodestar by 25% where plaintiff succeeded on only two of ten claims).  As such, the Court will award attorney's fees as follows:

| Attorney | Lodestar | After 30% Adj. |
|---|---|---|
| Mr. Spear | $247,230.00 | $173,061.00 |
| Mr. Kennedy | $31,683.00 | $22,178.10 |
| Ms. McElroy | $17,788.50 | $12,451.95 |
| Ms. Elzer | $49,780.00 | $34,846.00 |
| Ms. Van Housen | $5,431.25 | $3,801.88 |

In sum, therefore, the Court will award Mr. Turco $207,691.05 for Minto Law Group, LLC (for the work of Mr. Spear, Mr. Kennedy, and Ms. McElroy) and $38,647.88 for Elzer Law Firm, LLC (for the work of Ms. Elzer and Ms. Van Housen).  Additionally, and because Zambelli does not challenge the expenses and costs sought by Mr. Turco, the Court will award $12,461.05 for Minto Law Group, LLC for litigation expenses and costs.

III.     Conclusion

For the foregoing reasons, it is hereby ORDERED that:

1.  Mr. Turco's request for prejudgment interest is DENIED.

11

2.  The applicable postjudgment interest rate in this case is 0.08%.  But, because the award of

such interest is automatic, Mr. Turco's request to amend the judgment is denied as MOOT.

3.  Mr. Turco is awarded, as a prevailing party, attorney's fees, costs, and expenses as follows:

a.  $207,691.05 for Minto Law Group, LLC, in attorney's fees, plus $12,461.05 for

litigation expenses and costs, for a total of $220,152.10.

b.  $38,647.88 for Elzer Law Firm, LLC, in attorney's fees.

IT IS FURTHER ORDERED that, in light of the foregoing, Zambelli's request for oral argument

is DENIED as MOOT.

IT IS SO ORDERED.


DATED this 9th day of February, 2022.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record